UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
                                        :
M.P.G., on behalf of J.P., a minor,     :
                                        :
                            Plaintiff,  :
                                        :        08 Civ. 8051 (TPG)
            – against –                 :
                                        :        **OPINION**
NEW YORK CITY DEPARTMENT OF             :
EDUCATION and JOEL I. KLEIN,            :
Chancellor of the New York City Schools,:
                                        :
                           Defendants.  :
                                        :
----------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 8/27/10

Plaintiff M.P.G. brings this action on behalf of her disabled daughter, J.P., against Defendants New York City Department of Education and Chancellor Joel I. Klein under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Plaintiff seeks to overturn a state administrative decision that denied reimbursement for private school tuition for her daughter J.P.

Defendants now move for summary judgment and plaintiff cross-moves for summary judgment.  Defendants' motion is granted and plaintiff's motion is denied.

### Glossary

Because of the numerous abbreviations which will be referred to in this opinion, it is appropriate to provide the following glossary.

CSE - DOE Committee on Special Education

DOE - New York City Department of Education

FAPE - Free Appropriate Public Education

FNR - Final Notice of Recommendation

IDEA - Individuals with Disabilities Education Act

IEP - Individualized Education Program

IHO - Impartial Hearing Officer

SRO - State Review Officer

## **Statutory Scheme**

The court believes it would be helpful to describe the applicable law before presenting the facts, so that the facts can be better appreciated.

Congress enacted the IDEA to promote the education of students with disabilities. The IDEA provides that a child with a disability must receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), which includes special education and related services provided at public expense, that meet the standards of the state educational agency and are provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. § 1401(9).

A child with a disability receives a FAPE when the child's education program is tailored to meet the child's unique needs and is "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982). However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided . . . ." Walczak v. Florida Union Free School Dist., 142 F.3d 119, 130 (2d Cir. 1998). The statute ensures an "appropriate" education, "not one that provides

- 2 -

everything that might be thought desirable by loving parents." Id. at 132 (internal quotations and citation omitted).  School districts are not required to "maximize" the potential of students with disabilities.  Rowley, 458 U.S. at 189, 199.  Nonetheless, a school district must provide "an IEP that is likely to produce progress, not regression, and . . . affords the student with an opportunity greater than mere trivial advancement."  Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 195 (2d Cir. 2005) (internal quotations and citation omitted).

The IDEA sets forth procedures for a parent to present a complaint regarding the educational placement of a student, including a complaint regarding the IEP.  See 20 U.S.C. § 1415(b)(6)(A).  Parents are entitled to a hearing before an Impartial Hearing Officer ("IHO") on their complaint.  See 20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. L. § 4404(1)(a).  The IHO's decision may be appealed by either party to the State Review Officer ("SRO"), who independently reviews the findings and decision rendered by the IHO.  20 U.S.C. § 1415(g). The SRO's decision in turn may be challenged in state or federal district court. 20 U.S.C. § 1415(i)(1)(B), (2)(A).

Parents who are dissatisfied with a school district's placement may also unilaterally place their child in a private school and then seek retroactive tuition reimbursement from the local school district.  20 USC § 1412(a)(10)(C). A board of education may be required to pay for the educational program selected by a parent only if (1) the educational program recommended by the board of education was inadequate or inappropriate; (2) the program selected

- 3 -

by the parent was appropriate, such that the private program meets the student's special education needs; and (3) the equities support the parent's claim. These three factors comprise the "Burlington-Carter" test. <u>A.D. v. Bd. of Educ.</u>, 690 F.Supp.2d 193, 205 (S.D.N.Y. 2010), citing <u>Sch. Comm. of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 369-70 (1985); <u>Carter</u>, 510 U.S. at 12.

In addressing Prong I of the Burlington-Carter test—whether the school district offered the student an adequate placement—a court looks at two factors: (1) whether the student's IEP was developed according to the IDEA's procedural requirements, and (2) whether the educational plan set forth in the IEP was reasonably calculated to confer educational benefit on the student. <u>Walczak</u>, 142 F.3d at 129 (citing <u>Rowley</u>, 458 U.S. at 206-07). Under the IDEA, if a procedural violation is alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2).

A reviewing court need not reach Prong II if it determines that the school district's IEP is adequate. <u>M.C. v. Voluntown Bd. of Educ.</u>, 226 F.3d 60, 66 (2d Cir. 2000). If the Court does consider Prong II—the appropriateness of the parent's unilateral placement—federal review similarly focuses on whether the private school's program was reasonably calculated to confer educational

benefits on the student.  Frank G. v. Bd. of Educ., 459 F.3d 356, 364 (2d Cir.

2006) (citing Rowley, 458 U.S. at 207).  As no one factor is dispositive in

evaluating a unilateral placement, courts make the determination based on the

totality of the circumstances.  Frank G., 459 F.3d at 364-65 (citing Rowley, 458

U.S. at 207).

　　　　Prong III of the Burlington-Carter test requires that the equities be

resolved in the parent's favor.  See A.D., 690 F.Supp.2d at 205.  The IDEA

explicitly provides that a request for tuition reimbursement for a unilaterally

chosen private school may be reduced or denied "upon a judicial finding of

unreasonableness with respect to actions taken by the parents."  20 U.S.C. §

1412(a)(10)(C)(iii)(III).

## Facts

　　　　Plaintiff M.P.G. is the mother of J.P. ("the Student").  J.P. was born on

November 1, 1998.  At all relevant times, J.P. has been a "child with a

disability" as that term is defined in the Individuals with Disabilities Education

Act of 2004, 20 U.S.C. § 1400, et seq.  Specifically, J.P. is classified as

"learning disabled," as that term is defined in 20 U.S.C. § 1401(30).

　　　　Defendant New York City Department of Education ("DOE") is the local

educational agency in New York City.  It is responsible for making free

appropriate public education available to children with disabilities between the

ages of 3 and 21 who reside in the City, including J.P.  See 20 U.S.C. § 1412.

Defendant Joel I. Klein, Chancellor of the New York City Schools, is sued in his

official capacity only.

J.P. attended a private school called St. Julian's for kindergarten and first grade. In May 2005, near the end of first grade, M.P.G. sought an evaluation from the Kennedy Child Study Center due to her concerns regarding J.P.'s academic performance, test anxiety, difficulty focusing and retaining new information, and fears related to attending school. Administration of the Wechsler Preschool and Primary Scale of Intelligence—Third Edition ("WPPSI-III") yielded the following standard (and percentile) scores: verbal IQ 70 (2d percentile), performance IQ 75 (5th percentile), and full scale IQ 73 (4th percentile), placing J.P.'s general cognitive ability in the borderline range of intellectual functioning. Completion of the Child Behavior Checklist ("CBCL") by M.P.G. resulted in scores in the clinical range on the anxious/depressed, somatic complaints, thought problems, and attention problems syndromes. The score on the social problems syndrome was in the borderline clinical range.

J.P. repeated first grade at St. Julian's, where she received remedial math and reading instruction and attended an after-school program five days a week. At the end of her repetition of first grade, the principal at St. Julian's indicated that J.P. could not return the following year and told M.P.G. that she needed to have her daughter evaluated.

On or about May 17, 2006, M.P.G. requested that the DOE evaluate her daughter. In her request, M.P.G. indicated that J.P. did not focus well and forgot things very easily. She provided the DOE with the Kennedy Center report, noting that J.P. had been left back, had very low self-esteem, and that the private school would not allow her to return. According to M.P.G., the DOE

informed her that it would contact her within 30 days. However, the DOE did not contact her until November 2006. For the 2006-07 school year, M.P.G. unilaterally placed J.P. at the Cooke Center for Learning and Development.

On November 13, 2006, the DOE's Committee on Special Education ("CSE") met for an initial review of J.P.'s case. The resultant IEP indicated that J.P. was below grade level in all academics and that she suffered from test anxiety and some degree of school phobia. The CSE recommended that J.P. be classified as having a learning disability and placed in a special education class with a 12:1+1 student to teacher to paraprofessional ratio, but mainstreamed for music, art, and physical education. However, since a placement was not available for the 2006-07 school year, J.P. remained at Cooke, with the tuition funded by the DOE by order of an Impartial Hearing Officer.

On May 14, 2007, the CSE convened a meeting for J.P.'s annual review and to develop an IEP for the 2007-08 school year. The IEP team meeting was attended by M.P.G.; a district representative, who was also a school psychologist; a CSE special education teacher; a CSE social worker; J.P.'s teacher from Cooke; and a parent member.[1] It appears that no general-education teacher was in attendance at this meeting. The IEP recommended that J.P. be placed in a special class (i.e., a class composed solely of students with disabilities) with a 12:1+1 student to teacher to paraprofessional ratio in a

---

[1] In addition to the parents of the child for whom the IEP is being developed, the CSE is required to include a "parent member." N.Y. Comp.Codes R. & Regs. tit. 8, § 200.3(a)(i)(viii). A parent member is a parent of a child with a disability whose role at the IEP meeting is to provide support and information to the student's parents and advocate for the student's best interests. M.N. v. New York City Dept. of Educ., Region 9 (Dist. 2), No. 09 Civ. 20(RJS), 2010 WL 1244555, at *6 n.11 (S.D.N.Y. Mar. 25, 2010).

general education school, an assessment with which M.P.G. agreed. The IEP set forth annual goals and short-term objectives, and recommended that J.P. receive speech therapy, occupational therapy, and counseling. Plaintiff M.P.G. received a copy of the IEP on the same day as the CSE team meeting.

By Final Notice of Recommendation ("FNR") dated June 25, 2007, the DOE offered J.P. a place in the special education program at P.S. 2 in lower Manhattan. However, M.P.G. has testified that she did not receive this notification and in fact never received a written FNR. On or about August 14, 2007, M.P.G. spoke by phone with a DOE official who informed her that the DOE had offered J.P. a placement at P.S. 2 for the 2007-08 school year. On August 16, 2007, the DOE faxed to M.P.G. a document purporting to be the FNR for J.P.'s placement, but M.P.G. received only a fax cover sheet, which did not contain the placement information.

On June 26, 2007, prior to any notification of a DOE placement, M.P.G. had signed a contract for the placement of J.P. at Cooke for the 2007-08 school year. However, this contract provided that M.P.G. would be released from her obligation to enroll J.P. if the DOE provided J.P. a FAPE. On August 20, 2007, M.P.G. sent a letter to the DOE asking to visit the proposed placement and requesting further information concerning the age, gender, academic level, disabilities, and behavior of the other students in the class, the opportunities for mainstreaming, and the provision of the related services mandated in the IEP. On the same date, M.P.G., through her attorney, advised the DOE that she had not been provided with an appropriate placement offer and would be

- 8 -

unilaterally placing J.P. at Cooke for the 2007-08 school year.

Despite this, on or about August 24, 2009, M.P.G. enrolled J.P. at P.S. 2, with the understanding that she could try out the placement and remove J.P. at any time. September 4, 2007 was the first day of classes at P.S. 2. M.P.G. took J.P. to school that day, meeting the teacher and remaining in the class for 10 to 15 minutes. J.P.'s class was a special education class with a 12:1+1 student to teacher to paraprofessional ratio, although M.P.G. did not witness a paraprofessional in the classroom that day. The class was composed of eight students in the third, fourth and fifth grades. M.P.G. was surprised and concerned that there was such a wide age range in the class and that J.P. would be one of the youngest students. The teacher, Terrance Sumner, explained to M.P.G. that he had not read J.P.'s IEP, and that he prefers to work with what he sees with a child. When M.P.G. picked up J.P. after the first day of school, J.P. was crying because she did not understand the day's math assignment. She told her mother that she did not like the class and wanted to go back to Cooke.

M.P.G. did not bring J.P. back to P.S. 2 after the first day, nor did she call the P.S. 2 teacher or administrators to convey her concerns. Instead, on September 4, 2007, M.P.G. called Cooke, explaining that she had tried the public school, but that J.P. did not like it. She was advised by Cooke to bring J.P. back to school at Cooke. Also on September 4, 2007, through her attorney, M.P.G. filed an Impartial Hearing Request regarding the DOE's alleged failure to provide a FAPE. This letter also described M.P.G.'s concerns

- 9 -

with the class at P.S. 2 and informed the DOE that M.P.G. had unilaterally placed J.P. at Cooke and was seeking reimbursement for tuition and transportation expenses.[2]  J.P. began attending Cooke for the 2007-08 school year on September 5, 2007.

On November 26, 2007 and January 10, 2008, a hearing was held before Impartial Hearing Officer Debra Siedman DeWan (the "IHO").  By decision dated February 1, 2008, the IHO concluded that M.P.G. had met her burden of persuasion to prove that the DOE had not offered J.P. a FAPE for the 2007-08 school year.  In her Findings of Fact and Decision, the IHO found a number of procedural and substantive defects in J.P.'s IEP program and her eventual placement at P.S. 2.  Procedurally, the IHO found that: (1) there was no general education teacher at the May 2007 CSE meeting; and (2) the FNR informing M.P.G. of the P.S. 2 placement was not timely.  Substantively, the IHO determined that: (1) the age range in the P.S. 2 classroom exceeded 36 months, violating New York State regulations and causing J.P. particular problems in light of her social and emotional delays; (2) there was a wide gap in functional levels of students in the class; (3) Sumner, the teacher, was inexperienced and had insufficient supervision; and (4) it was inappropriate for J.P. to be placed in a class with older students who exhibited disruptive behavior.  The IHO determined that the DOE therefore did not offer J.P. a FAPE.  She further held that M.P.G.'s unilateral placement was appropriate,

---

[2] M.P.G. never contacted P.S. 2 directly to inform them that J.P. would not be returning.  Members of the P.S. 2 staff tried to contact M.P.G. on several occasions, but were unable to reach her.  School officials eventually reached out to J.P.'s grandmother and learned at that point that J.P. would not be returning.

and that the equitable considerations favored M.P.G.  The IHO ordered the DOE to fund J.P.'s placement at Cooke for the 2007-08 school year.

The DOE appealed the IHO's decision to the SRO by petition dated March 7, 2008.  M.P.G. served a memorandum of law along with an answer and cross-appeal dated April 3, 2008.  On May 19, 2008, the SRO sustained the DOE's appeal, dismissed M.P.G.'s cross-appeal, reversed the IHO's decision, and held that the DOE had offered J.P. a FAPE for the 2007-08 school year.  The SRO did not reach the IHO's ruling with respect to the appropriateness of J.P.'s placement at Cooke or the balance of equities.

The SRO first found that the IHO had correctly placed the burden of persuasion on M.P.G. to prove that the DOE had not offered J.P. a FAPE.  The SRO noted that M.P.G.'s due process complaint was dated September 4, 2007, "well before" the burden of proof shifted by statute to the school district on October 14, 2007.  Admin. Record, Exh. VI at 10.

As to the alleged procedural defects, the SRO first found that the hearing record "amply demonstrate[d] that the school district gave plaintiff adequate notice of the recommended placement," and pointed to M.P.G.'s testimony that she had received notice of the recommended school by facsimile in August 2007.  Id.  He also found it "significant" that M.P.G. had been able to enroll J.P. in P.S. 2 before the first day of school, Id. at 10-11, and noted that M.P.G. had agreed with the IEP team's recommendation for a 12:1+1 special class program.

Next, as to M.P.G.'s allegations regarding the lack of a general education teacher at the May 2007 IEP team meeting, the SRO noted that it was improper of the IHO to consider this argument because M.P.G. had neither raised it in her due process complaint nor sought permission to amend that complaint.  The SRO also noted that M.P.G. had not met her burden to demonstrate that this alleged deficiency, even if it did occur, constituted a denial of FAPE.

In considering the alleged substantive defects, the SRO concluded that the DOE's recommended program "addressed the student's primary educational needs," Id. at 15, and that the P.S. 2 placement was appropriate. First he noted that, although grouping students in excess of the age-related guidelines may be a technical defect, failure to do so is not always fatal to the district's claim that a FAPE was offered if the students are appropriately grouped in terms of functional needs.  Here, J.P.'s academic level was from kindergarten to first grade, while the other students ranged from a kindergarten to a fourth grade level.  The SRO examined Sumner's plan for functional grouping, for pairing J.P. with another third grade girl, and for monitoring the students and concluded that M.P.G. did not establish how this plan would have resulted in a denial of FAPE.

The SRO also rejected M.P.G.'s argument that Sumner was unqualified. The SRO first pointed out that the IDEA authorizes each state educational agency to determine the qualifications for special education teachers.  He found that the New York "Transitional B" certificate that Sumner held certified him to

- 12 -

teach in both regular and special education settings. The SRO noted that, for the 2006-07 school year, Sumner provided special education support services, which gave him experience dealing with students of different abilities and ages. The SRO further credited Sumner's testimony that he had received training in something known as Wilson instruction, which provided him with experience teaching students with severe phonics issues, one of J.P.'s noted deficits. Considering these facts, the SRO held that there was no adequate basis to conclude that "the teacher's relative newness to the profession" demonstrated that his instruction would constitute a denial of FAPE. Id.

The SRO next noted that, although there were two students in the P.S. 2 classroom who at times exhibited difficult behavior, the rest of the class was very well behaved. Regarding the two students, Sumner indicated that he was able to control the first student's behavior and that the second was not disruptive to the class and paid little regard to younger students. Sumner indicated that J.P. would have fit into his class and that he could have addressed her needs. The SRO concluded therefore that the hearing record did not indicate how the students' behaviors resulted in a denial of FAPE to J.P.

Accordingly, the SRO found that the DOE offered J.P. a FAPE for the 2007-08 school year, and vacated the IHO's tuition-payment order.

M.P.G. challenged the SRO's decision in this court by Complaint dated September 17, 2008.

## **Discussion**

I.  Standard of Review

The parties have styled their submissions as motions for summary judgment.  However, the procedure is in substance an appeal from an administrative determination, not a summary judgment.  Lillbask ex rel. Mauclaire v. Conn. Dept. of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005). Further, unlike an ordinary summary judgment motion, the existence of a disputed issue of material fact will not necessarily defeat a motion for summary judgment in the IDEA context.  Viola v. Arlington Cent. School Dist., 414 F.Supp.2d 366, 377 (S.D.N.Y. 2006).  The court in such a case conducts an "independent" review of the appealed decision.  Rowley, 458 U.S. at 205.

The Second Circuit has explained that the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed. Gagliardo v. Arlington Cent. School Dist., 489 F.3d 105, 112 (2d Cir. 2007). While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. A.C. ex rel. M.C. v. Board of Educ., 553 F.3d 165, 171 (2d Cir. 2009).  Although federal courts do not simply rubber stamp administrative decisions, Walczak, 142 F.3d at 129, courts may not substitute their own notions of sound educational policy for those of the school authorities which they review. Rowley, 458 U.S. at 206.  It is particularly appropriate to affirm an SRO's

decision when the state administrative review has been thorough and careful.
Walczak, 142 F.3d at 129. And if a final state determination conflicts with an
earlier decision, the earlier decision may be afforded diminished weight.
Gagliardo, 489 F.3d at 113 n.2.

## II. Free and Appropriate Public Education (the FAPE)

### A. Burden of Proof

M.P.G. argues that during the administrative proceedings, both the IHO
and the SRO mistakenly assigned the burden of proof to her.

In an amendment dated August 15, 2007, the New York State legislature
shifted the burden of proof in impartial hearings to the school district. See
N.Y. Educ. L. § 4404(1)(c). The amended law would apply to impartial hearings
commenced on or after the effective date of October 14, 2007. Id. Defendants
argue that an "impartial hearing" commences on the date of the filing of the
complaint, while M.P.G. argues that an "impartial hearing" commences on the
first day of testimony. The question is significant because the complaint here
was filed on September 4, 2007, before the amended law became effective,
while the first day of testimony was November 26, 2007, after the amended law
became effective.

The Second Circuit has stated that the impartial due process hearing
concerning the provision of a FAPE to a disabled child "is commenced with the
presentation of a complaint." Vultaggio v. Board of Educ., 343 F.3d 598, 600
(2d Cir. 2003). This court will follow this pronouncement.

Both the IHO and the SRO correctly held that M.P.G.'s "impartial hearing" began with the filing of the complaint on September 4, 2007, before the amended law took effect, and that the burden of proof thus fell on M.P.G.

### B. Alleged Procedural Defects

While the IDEA delineates certain procedural requirements, the Act also provides that a denial of FAPE cannot be found for procedural violations alone unless the procedural inadequacies "[1] impeded the child's right to a free appropriate public education; [2] significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or [3] caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). Here, M.P.G. alleges two procedural flaws: (1) the lack of a general education teacher at the May 2007 CSE meeting; and (2) the lack of a timely public school placement offer.

### 1. No General Education Teacher at the CSE Meeting

By New York law, at the annual review of a student already classified as having a disability (as here), the IEP team must include at a minimum the student's parent(s) and a representative of the school district who is familiar with both special and general education and knowledgeable about the availability of resources. 8 N.Y.C.R.R. § 200.3(a)(1); see also 20 U.S.C. § 1414(d)(1)(B). The participation of a general education teacher is also required if the student "is or may be participating in the regular education environment." 8 N.Y.C.R.R. § 200.3(a)(1)(ii); see also 20 U.S.C. § 1414(d)(1)(B)(ii).

Defendants first argue that since M.P.G. did not raise the issue of the lack of a general education teacher in her due process complaint, as required by the IDEA and state and federal regulations, the SRO correctly declined to consider this as grounds for finding that J.P. had been denied a FAPE. SRO Dec. at 11; see also 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice . . . unless the other party agrees otherwise"); 34 C.F.R. § 300.511(d); 8 N.Y.C.R.R. § 200.5(j)(1)(ii). The SRO was therefore correct to decline to consider the issue. However, as a court in this district has noted, there is arguably no reason that issues not raised in IDEA administrative proceedings may not be raised on appeal to the district court since, by statute, the district court's review may include the consideration of additional evidence. See Arlington v. D.K. and K.K., No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *9 (S.D.N.Y. Nov. 14, 2002); 20 U.S.C. § 1415(i)(2)(C)(ii). Therefore, even if the SRO was correct not to consider the issue, the district court may arguably consider it now.

Defendants also argue that the court must reject plaintiff's argument that the absence of a general education teacher constituted a denial of FAPE because J.P. was never considered for general education classes. 8 N.Y.C.R.R. § 200.3(a)(1)(ii); 34 C.F.R. § 300.321(a)(2); see also 20 U.S.C. § 1414(d)(1)(B)(ii). In fact, however, the IEP team had recommended a special class (i.e., a class composed solely of students with disabilities) in a general education school because they felt that a special class in a special school would be too restrictive

- 17 -

for J.P. Further, according to M.P.G.'s testimony, the IEP team considered it a possibility that J.P. could eventually be mainstreamed. On these facts, the presence of a general education teacher might have been a significant means of illuminating the extent to which J.P. could ever be integrated into the regular curriculum. See Arlington, 2002 WL 31521158, at *9.

It may be that M.P.G. has made a case of a procedural flaw, but the issue is whether she has met her burden of proving that this procedural flaw denied J.P. a FAPE. The SRO in considering this issue noted that M.P.G. had not demonstrated that this alleged deficiency, even if it did occur, constituted a denial of FAPE. In accordance with law previously cited, a court must give due weight to the administrative proceedings, and should not substitute its own notions of sound educational policy for those of the authorities which it reviews. Rowley, 458 U.S. at 206. The court therefore holds that the absence of a general education teacher did not deny J.P. a FAPE.

### 2. Timely Offer of Placement

Both the federal and the New York State regulations implementing the IDEA require that a student with a disability has an IEP in effect "at the beginning of each school year." 34 C.F.R. 300.323(a); 8 N.Y.C.R.R. § 200.4(e)(1)(ii). The DOE's internal policies specify that the school district must select a placement and send the FNR to the parents by August 15. NYC Dept. of Educ. Standard Operating Procedures Manual 119 (Feb. 2009), available at http://schools.nyc.gov/NR/rdonlyres/5F3A5562-563C-4870-871F-BB9156EEE60B/0/03062009SOPM.pdf (last visited Aug. 5, 2010).

Here, M.P.G. received notice of the recommended program on May 14, 2007, and notice of the placement over the phone on or about August 14, 2007. While it is true that M.P.G. did not receive the FNR document by the DOE's internal policy deadline (and in fact may never have received the actual document), according to her own testimony she was informed of the placement before the deadline. And at any rate, she certainly had notice of the placement sufficiently before the beginning of the school year to allow her to enroll J.P. at P.S. 2 and for J.P. to attend the first day of class. As courts in this district have stated, an education department's delay does not violate the IDEA so long as the department still has time to find an appropriate placement for the beginning of the school year in September. Tarlowe v. N.Y. City Bd. of Educ., 2008 WL 2736027, at \*6 (S.D.N.Y. Jul. 3, 2008) (citing Bettinger v. N.Y. City Bd. of Educ., 2007 WL 4208560, at \*8 n.26).

The SRO, in reviewing the evidence, noted that the hearing record amply demonstrated that the district afforded the parent adequate notice of the recommended placement and that, significantly, the parent enrolled her daughter in the district's recommended placement prior to the commencement of the school year, and she appeared at the school with her daughter on the first day of school. SRO Dec. at 10-11. In applying the IDEA framework for the analysis of procedural violations, the SRO concluded that the parent failed to establish that the district's alleged failure to properly mail the FNR containing the placement impeded the student's right to a FAPE, or significantly impeded the parent's opportunity to participate in the decision-making process

regarding the provision of a FAPE to the student, or caused a deprivation of educational benefits.  Id. at 11.  There appears to be no reason to disturb the SRO's thorough and careful decision with regard to the timing of the placement offer.  See Walczak, 142 F.3d at 129.

### C. Alleged Substantive Defects

A state or local educational agency has complied with the substantive provisions of the IDEA if it provides the disabled child with an IEP that is reasonably calculated to enable the child to receive educational benefits. Rowley, 458 U.S. at 206-07.  More specifically, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement.  Cerra, 427 F.3d at 195 (citing Walczak, 142 F.3d at 130).

The Second Circuit has noted that, because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy. Cerra, 427 F.3d at 195.  Indeed, the Circuit has reversed a district court's findings where it determined that the district court impermissibly chose between the views of conflicting experts on a controversial issue of educational policy in direct contradiction of the opinions of state administrative officers who had heard the same evidence.  T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418-419 (2d Cir. 2009).

1. Excessive Age Range and Functional Grouping

New York State regulations implementing the IDEA require that the "chronological age range within special classes of students with disabilities who are less than 16 years of age shall not exceed 36 months." 8 N.Y.C.R.R. § 200.6(h)(5). State regulations also require that in special education classes, students must be suitably grouped for instructional purposes with other students having similar individual needs. 8 N.Y.C.R.R. § 200.1(ww)(3)(i), 200.6(a)(3), 200.6(h)(2).

M.P.G. asserts that J.P. was denied a FAPE because the age range of the students in the DOE-recommended placement exceeded 36 months. First, it is worth noting that although 42 months separated the oldest student in the class from the youngest, J.P. herself was only 34 months younger than the oldest student. Further, as the SRO noted, failure to adhere to the age-related guidelines is not always fatal to the district's claim that a FAPE was offered to the student if the students are grouped appropriately in terms of functional needs. SRO Dec. at 12.

However, M.P.G. also argues that J.P. was not grouped appropriately in terms of her functional needs. Academically, J.P. was the lowest-level reader in the class, at a kindergarten reading level, and also ranked near the bottom in math. The closest student in reading level was a full year or more ahead of her. Only one other student was close to J.P. in math while the rest were a year or more ahead. However, Sumner testified that he planned to group J.P. for instruction with the girl closest to her in math level, and that in fact he had

- 21 -

identified that student as a potential mentor for J.P. He further testified that because J.P. did not have a natural pairing for reading, she would have received one-on-one instruction from him.

After thorough and careful consideration, the SRO found that in this case the excessive age range in the DOE placement did not constitute a denial of FAPE because J.P. would have been appropriately grouped for instruction in terms of her functional needs. The district court must give due weight to the administrative proceedings, particularly where, as here, the question is one of educational policy. A.C. ex rel., 553 F.3d at 171. Further, upon considering the evidence in the record, there is nothing to suggest that the SRO was incorrect. Therefore, the court affirms the SRO's decision on this issue.

### 2. Student Behavior

J.P.'s IEP stated that one of her "Social/Emotional Management Needs" was the "modeling of appropriate behavior." Admin. Record, Exh. J at 4. Nonetheless, the two oldest students in the proposed class had behavioral problems: one, who had ADHD, needed a lot of attention, the other was oppositional and argumentative. One was also described by the school guidance counselor as having aggressive behavior. Hearing Tr. at 75, 77, 104. M.P.G. argues that such a placement was inappropriate for J.P. and a denial of FAPE because such an environment was contradictory to the mandate of the IEP and, according to the testimony of J.P.'s teacher at Cooke, would likely cause J.P. to regress.

- 22 -

While New York State regulations require a school district to consider the social needs of a student with a disability when selecting an appropriate educational placement, they explicitly provide that the "social needs of a student shall not be the sole determinant of such placement." 8 NYCRR § 200.6(a)(3)(ii). Here, the SRO determined that the occasional behavioral difficulties of two students did not render the DOE placement inappropriate. The SRO credited Sumner's testimony that one student's misbehavior was directed primarily at him and did not disrupt the class, and that he had control of the other student. The SRO also relied on Sumner's testimony that the oppositional behavior of the two students did not adversely impact learning in the classroom.

It would certainly seem that, as the teacher of the two students, Sumner was in the best position to evaluate the extent and potential impact of their disruptive behavior, and it was upon Sumner's testimony that the SRO relied in making his determination. In light of this, and giving due weight to the administrative proceedings, there seems to be no reason to overturn the SRO's conclusions on this question.

### 3. Teacher Inexperience

M.P.G. further argues that Sumner had insufficient experience to teach a class of students of such widely divergent academic and social levels, and that he lacked adequate supervision, since his was the only special education class in the school and none of his supervisors had experience teaching special education. Therefore, M.P.G. argues, J.P.'s placement in his class constituted

a denial of FAPE.

The SRO found that Sumner was qualified to teach (1) because he held a "Transitional B" certificate, which authorized him to teach under New York State law; (2) because of his training in Wilson instruction, which provided him with experience teaching students with issues in phonics (one of J.P.'s noted deficits); and (3) because of his prior experience as a Special Education Teacher Support Services ("SETSS") teacher, providing him with familiarity in dealing with students of different abilities and ages.

While plaintiff may have preferred a more experienced teacher, New York State had determined that Sumner was qualified to teach this class. Further, it would seem that if there is anything that requires the "specialized knowledge and experience" that warrants judicial deference, it is the determination of a teacher's qualifications. See Rowley, 458 U.S. at 208. Therefore, the court affirms the SRO on this question and determines that there is no adequate basis to conclude that Sumner's relative newness to the profession led to a denial of FAPE.

D. Plaintiff Has Not Met Her Burden of Showing a Denial of FAPE

In conclusion, M.P.G. has not succeeded in demonstrating that defendants failed to provide J.P. with a free appropriate public education (FAPE) as required under the IDEA.

III. No Need to Reach the 2d or 3d Factors of the "Burlington-Carter" Test

The parties make further arguments as to (1) whether J.P.'s placement at Cooke was appropriate, such that it met her special education needs; and (2)

- 24 -

whether the equities support M.P.G.'s claim. However, a reviewing court need

not reach these questions if, as here, it determines that the school district's IEP

was adequate. M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000).

Therefore, it is unnecessary to reach these questions here.

IV.  Rehabilitation Act § 504

M.P.G. also brings a cause of action under the Rehabilitation Act.

Section 504 of the act provides:

> No otherwise qualified individual with a disability in the United
> States . . . shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving
> Federal financial assistance or under any program or activity
> conducted by any Executive agency . . . .

29 U.S.C. § 794(a).

In order to prove a violation of § 504 in the context of educating a child

with disabilities, a plaintiff must prove (1) that the school district failed to

provide a free and appropriate public education, and (2) that the district acted

in bad faith or showed gross misjudgment. BD v. DeBuono, 130 F.Supp.2d

401, 439 (S.D.N.Y. 2000). For all of the reasons set forth above, M.P.G. cannot

meet her burden on the first element because defendants did provide J.P. with

a FAPE. Therefore, M.P.G.'s Rehabilitation Act claim fails.

## Conclusion

For the reasons outlined above, defendants' motion for summary

judgment is granted and plaintiff's motion for summary judgment is denied.

This opinion resolves the motions listed as document numbers 35 and 39 in

- 25 -

this case.

SO ORDERED.

Dated:  New York, New York
        August 27, 2010

                                          Thomas P. Griesa
                                          U.S.D.J.